## William J. Graves v. George Pflueger.

Decided June 19, 1901.

1.—Conveyance—Warranty.

A warranty is no part of the conveyance of land; it is a collateral undertaking and may be shown by parol.

2.—Same—Exchange of Land—Deed from Third Party.

On an exchange of land—plaintiff conveying by warranty to defendant and taking conveyance with warranty from a third party, of whom defendant was purchasing the land exchanged, the title to which proved defective—it could be shown by parol that defendant recognized his liability on the warranty of the third party, as being, in fact, made for him.

Appeal from Travis. Tried below before Hon. F. G. Morris.

*Sam B. Kemp* and *Ernest W. Townes,* for appellant.

*William Von Rosenberg, Jr.,* for appellee.

COLLARD, Associate Justice.—This is a suit brought by appellant, William J. Graves, against appellee, George Pflueger, to recover $766.10 for breach of warranty on failure of title to 100 acres of land in exchange of lands, whereby plaintiff conveyed to defendant, by general warranty deed, 122 1-3 acres of land for the 100 acres conveyed by defendant, and $446.66 cash paid by defendant as difference in the agreed values of the two surveys. The petition shows that the title to the 100 acres failed, judgment having been rendered in favor of the Scottish American Mortgage Company, foreclosing lien on a large tract of land, including the 100 acres, under which the same was ordered sold, and plaintiff paid balance due on that judgment to release the same, for which he

sues on the warranty, all the rest of the large tract having been previously sold under the judgment, leaving balance unpaid, to wit, the amount paid by plaintiff. The case was tried by the court without a jury and judgment was rendered for appellee against appellant, and the latter has appealed.

*Findings of Fact.*—We find the facts as follows: Graves and Pflueger verbally agreed to exchange lands, Graves to convey his 122½ acres for Pflueger's 100 acres, the latter to pay $20 per acre for the excess over 100 acres, each to execute to the other general warranty deeds. On March 16th the parties met in Austin to perform the agreement. We now quote the testimony of plaintiff, which we find to be true:

"When I got to Austin, I went to D. B. Gracy's office and told him to prepare a warranty deed from me to Pflueger for the 122 1-3 acres of land. I then went out and found Pflueger, and told him that Gracy was then preparing the deed from me to him. He said that I had better stop him, as he had to see Frank Hamilton, as he had not at that time closed the trade to the 300 acres he was to buy from Hamilton. Pflueger then went to see Hamilton, and returned after a while, and he and I went back to Gracy's office together, and I told Gracy to make out the deed, and Pflueger told him to make it a warranty deed, as he had to give Graves that kind. Pflueger and I then started up to Hamilton's office and met Hamilton on the sidewalk, and Pflueger told him that the trade was closed, and for him, Hamilton, to make out the deed to him, Pflueger, to the 300 acres of the Booty land which he, Pflueger, had bought from him, and he Pflueger, would make the deed to me, Graves, for the 100 which I was to get from Pflueger. Hamilton told Pflueger there was no use of that; to let him, Hamilton, make the deed to me for the 100 acres and thus save two or three dollars of the expense of the deed. Pflueger asked me how this would suit me. I hesitated; Hamilton assured me it would be all the same to me. I agreed and accepted the deed signed by Hamilton, which is in evidence."

Graves executed to Pflueger a deed in statutory form, with general covenants of warranty, March 16, 1895, conveying the 122 1-3 acres of land described in petition; and Hamilton at same time executed to Graves same kind of deed to Graves for the 100 acres, expressing consideration at $1500.

Graves was the owner of the 122 1-3 acres by fee simple title, and conveyed a good title to Pflueger; and under that conveyance the latter went into possession and has been in possession ever since. At that time the land was, and is now, worth more than the amount sued for, and the only consideration Graves received for it was the $446.66 cash paid by Pflueger, and the deed signed by Hamilton to the 100 acres of land.

At that time, the 16th of March, 1895, the 100 acres was incumbered by deed of trust securing a debt of $6500 principal, executed by J. W. Booty and wife to R. L. Brown, trustee, which debt was assumed by

Hamilton, and the land conveyed to him by Booty and wife. That debt was not paid, and on October 22, 1898, the Scottish American Mortgage Company, the owner ·and holder of the debt and the deed of trust, sued in Travis County, Texas, and foreclosed the lien, joining all ·proper parties, including plaintiff and defendant. December 22, 1899, decree was rendered foreclosing the deed of trust lien, ordering the land sold to pay the amount then due, $8770.67, fixing the order in which the several tracts should be sold. Order of sale issued to collect balance due on the 17th of July, 1900, and the land, including the 100 acres sold to Graves, was advertised for sale on the 7th of August, 1900. The sheriff on that day sold all the tracts as ordered, before selling the 100 acres, and there was still a balance due of $766.60, and to prevent sale of same, Graves was compelled to pay and did pay the sheriff that sum in cash, and none of it has been returned to him.

Graves paid Hamilton nothing for the conveyance of the 100 acres, but in consideration of the same conveyed 100 acres of the 122 1-3 acres, reasonably worth $2000.

Immediately after the conveyance of the 100 acres to Graves, he went into possession of the same and made improvements thereon, and has not been interfered with in his title, except as stated under the deed of trust and foreclosure.

The court below filed conclusions of fact and law as follows:

"Findings of Fact—The court finds that plaintiff and defendant entered into a verbal contract for plaintiff to buy of defendant the land described in plaintiff's petition and execute a warranty deed therefor, it being understood that defendant did not own the land, but would acquire it from one Frank Hamilton, in connection with some other land which defendant desired for his own use. Plaintiff was to pay for the land partly by conveying a less valuable tract of land to defendant and the difference in cash. Plaintiff preferred to execute deed to defendant and stated his readiness to do so, but defendant told him that he (defendant) had not yet obtained the land from Hamilton, but would proceed to do ·so, whereupon it was agreed between the parties and Hamilton that Hamilton should make the deed direct to plaintiff, instead of conveying to defendant and he conveying to plaintiff, which was done, and plaintiff made the conveyance to defendant as agreed upon and paid the balance to plaintiff and not to Hamilton. Nothing was said about defendant joining in the deed, nor was there anything said about defendant making a warranty, unless it be considered that the agreement to take the deed from Hamilton was a waiver of a warranty from defendant.

"On the facts I conclude that the parties so far changed the original contract before carrying it into effect that defendant did not join in or become a party to the warranty sued on.

"Conclusions of Law.—On the foregoing facts I conclude that defendant is not liable on the warranty sued on."

*Opinion.*—The main question presented by the record is, what was the understanding of the parties, Pflueger and Graves, in having Hamilton make the deed and warrant the title to Graves, whether Hamilton was acting for himself or for Pflueger? To arrive at a conclusion, Graves offered to show by himself and also by one Sessler that Pflueger admitted his liability on the warranty. This testimony would tend to show that the original contract had not been changed, that Pflueger was to warrant the title to Graves, and that Hamilton was acting for Pflueger in making the deed. A warranty is no part of the conveyance of land; it is a collateral undertaking and may be shown by parol. Richardson v. Levi, 67 Texas, 365, 366. If Hamilton was merely acting as the instrument to make the deed and was acting for Pflueger, his deed and warranty would be the act of Pflueger himself. Rutherford v. Montgomery, 14 Texas Civ. App., 319. The evidence excluded was pertinent to these issues, and should have been admitted.

For the error pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*